IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SETTLEMENT FUNDING LLC, et al.,        §
                                       §
        Plaintiffs,                    §
                                       §
v.                                     §        CIVIL ACTION NO. H-12-2044
                                       §
RSL FUNDING, LLC, et al.,              §
                                       §
        Defendants.                    §
                                       §
v.                                     §
                                       §
JLL PARTNERS, INC., et al.,            §
                                       §
        Third-Party Defendants.        §


<u>**MEMORANDUM AND RECOMMENDATION**</u>


        Pending before the court[1] are JGWPT Holdings, LLC's ("JGWPT")
Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 38),
David Miller's ("Miller") Motion to Dismiss for Lack of Personal
Jurisdiction (Doc. 40), and JLL Partners, Inc.'s ("JLL") Motion to
Dismiss for Lack of Personal Jurisdiction (Doc. 41).  The court has
considered the motions, the responses, all other relevant filings,
and the applicable law.  For the reasons set forth below, the court
**RECOMMENDS** that all three motions be **GRANTED**.

## I.  Case Background

        This action involves disputes over business practices between

_____

        [1]     This case was referred to the undersigned magistrate judge pursuant
to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the
Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 11.

factoring companies competing in the secondary market of acquiring long-term financial instruments, such as structured settlement payment rights.[2] It was originally filed in Texas state court, where several similar cases were consolidated, two of which were later severed into separate causes after judgments were entered.[3] J.G. Wentworth S.S.C. Limited Partnership ("J.G. Wentworth"), JGWPT, Miller, and JLL removed the remaining cause after RSL Funding, LLC, ("RSL") added the four of them to the lawsuit.[4]

As far as the court can tell, the first lawsuit underlying the present dispute was filed in October 2005 by Rapid Settlements, Ltd., now known as Liquidating Marketing, Ltd., ("Rapid Settlements") to confirm an arbitration award against an annuitant with whom it had contracted.[5] Settlement Funding, LLC, ("Settlement Funding"), doing business as Peachtree Settlement Funding, LLC, ("Old Peachtree") intervened.[6] The lawsuit was consolidated with two others concerning business interactions with different annuitants.[7] Old Peachtree recovered a judgment as to

---

[2]     See Doc. 1, Notice of Removal p. 2; Doc. 1-2, Def. RSL Funding, LLC's ("RSL") 3$^d$ Am. Countercl. & 1st Am. 3$^d$-Party Pet. p. 3.

[3]     See Doc. 1, Notice of Removal pp. 2-3.

[4]     See Doc. 1, Notice of Removal.

[5]     See Rapid Settlements, Ltd. v. Settlement Funding, LLC,(hereinafter Rapid I), No. 14-09cv00637-CV, 2010 WL 3504182, at *1 (Tex. App.–Houston [14th Dist.] Sept. 9, 2010, no pet.)(unpublished).

[6]     See id.

[7]     See Doc. 1, Notice of Removal p. 2.

one of the annuitants and executed it through a writ served at Rapid Settlements' office in January 2010.[8]

That same month, RSL and others filed a federal suit against Old Peachtree and its counsel, claiming that the seized assets did not belong to Rapid and seeking damages for wrongful seizure.[9] That case is stayed pending the resolution of certain issues in this case and the related case remaining before state court.[10]

Several months after the execution, Old Peachtree amended its petition to add claims against Rapid Settlements, RSL, Rapid Management Corporation, and Stewart A. Feldman ("Feldman") "for fraudulent transfer, piercing the corporate veil, and partnership liability."[11] Old Peachtree also sued Rapid Settlements and RSL for tortious interference specifically related to an annuitant who had not previously been named in any pending lawsuit.[12] Old Peachtree sought and received an injunction against RSL and Rapid Settlements preventing them from interacting with Old Peachtree's customers worldwide.[13]

---

[8]     See id. p. 3; Doc. 126, RSL's Resp. to Mots. to Dismiss p. 4.

[9]     See Doc. 1, Notice of Removal p. 3; FinServ Cas. Corp. v. Settlement Funding LLC, Civ. Action No. H-10-264 (S.D. Tex. 2010).

[10]    See Oral R. of Hr'g Dated Sept. 27, 2012.

[11]    Doc. 1, Notice of Removal p. 3; see also Doc. 126, RSL's Resp. to Mots. to Dismiss pp. 5-6.

[12]    See Doc. 1, Notice of Removal p. 4; see also Doc. 126, RSL's Resp. to Mots. to Dismiss p. 6.

[13]    Doc. 126, RSL's Resp. to Mots. to Dismiss p. 6; see also Doc. 1, Notice of Removal p. 2.

3

In September 2010, the Fourteenth Court of Appeals for the State of Texas reversed the award attorneys' fees in the initial trial court judgment.[14] In January 2012, the Fourteenth Court of Appeals reversed the later trial court decision with regard to the entry of a temporary injunction, finding it overbroad.[15] The court also found that a fact issue regarding fee segregation precluded summary judgment.[16]

On March 27, 2012, RSL filed its First Amended Counterclaim in state court against Settlement Funding and Peachtree Funding, LLC, ("New Peachtree"),[17] adding J.G. Wentworth, JGWPT, Miller, and JLL as counter-defendants.[18] RSL sought a declaratory judgment stating, among many other related declarations, that it has a right to offer to purchase structured settlement payment rights from an annuitant for more money than offered by a competitor prior to the entry of a final court order approving another factoring company's purchase agreement with that annuitant.[19]  Additionally, RSL alleged theft

---

[14]    See Rapid I, 2010 WL 3504182, at *1.

[15]    See Rapid Settlements, Ltd. v. Settlement Funding, LLC d/b/a Peachtree Settlement Funding, 358 S.W.3d 777, 781 (Tex. App.–Houston [14th Dist.] 2012, no pet.).

[16]    See id. at 790.

[17]    According to RSL, this entity was formed in July 2011. See Doc. 126, RSL's Resp. to Mots. to Dismiss p. 2.

[18]    See Doc. 1-2, Ex. B to Notice of Removal, Def. RSL's 1st Am. Countercl.

[19]    Doc. 1-3, Ex. B to Notice of Removal, Def. RSL's 1st Am. Countercl. pp. 13-15.

of property, conversion, fraudulent transfer, and civil conspiracy and further asserted that Old Peachtree was an alter ego of New Peachtree, that both were alter egos of JGWPT, and that JGWPT used companies it owned, including J.G. Wentworth, to perpetrate a nationwide fraudulent scheme to gouge customers and prevent competition.[20] RSL also accused Old Peachtree of wrongfully seeking and obtaining an injunction against RSL and Rapid Settlements.[21]

In April 2012, RSL amended its pleading, redesignating J.G. Wentworth, JGWPT, Miller, and JLL as third-party defendants.[22] J.G. Wentworth, JGWPT, and JLL received service of process on June 7, 2012, through the Texas Secretary of State.[23] Miller was served on June 14, 2012.[24] All four filed special appearances in state court asserting that the court lacked personal jurisdiction.[25] RSL added J.G. Wentworth Originations LLC ("Originations") when it amended its pleading again on June 29, 2012.[26] The case was removed to this

---

[20]   Id. pp. 15-19.

[21]   Id. p. 19.

[22]   See Doc. 1-2, Ex. B to Notice of Removal, RSL's 2d Am. Countercl. & Original 3d Party Pet.

[23]   Doc. 1, Notice of Removal p. 5.

[24]   Id. p. 5 n.1.

[25]   See Doc. 38-1, Ex. A to JGWPT's Mot. to Dismiss, JGWPT's Special Appearance; Doc. 39-1, Ex. A to J.G. Wentworth's Mot. to Dismiss, J.G. Wentworth's Special Appearance; Doc. 40-1, Ex. A to Miller's Mot. to Dismiss, Miller's Special Appearance; Doc. 41-1, Ex. A to JLL's Mot. to Dismiss, JLL's Special Appearance.

[26]   See Doc. 1-2, Ex. B to Notice of Removal, RSL's 3d Am. Countercl. & 1st Am. 3d Party Pet.

court on July 6, 2012.[27]

In January 2013, J.G. Wentworth, JGWPT, Miller, and JLL filed the pending motions to dismiss, reasserting their objections to the assertion of personal jurisdiction in Texas.[28]   The parties then became embroiled in disputes related to jurisdictional discovery.[29] J.G. Wentworth subsequently answered the lawsuit and waived its personal-jurisdiction challenge.[30]   On June 14, 2013, the court denied RSL and Rapid Settlements' motion to compel related to the jurisdictional discovery.[31]   RSL and Rapid Settlements moved for reconsideration.[32]   The court denied the motion on August 7, 2013, and ordered RSL and Rapid Settlements to file their responses to the pending motions to dismiss by August 21, 2013.[33]   RSL timely

---

[27]   See Doc. 1, Notice of Removal.

[28]   See Doc. 38, JGWPT's Mot. to Dismiss; Doc. 39, J.G. Wentworth's Mot. to Dismiss; Doc. 40, Miller's Mot. to Dismiss; Doc. 41, JLL's Mot. to Dismiss.

[29]   See, e.g., Doc. 49, Min. Entry Dated Feb. 5, 2013; Doc. 93, RSL & Rapid Settlements' Mot. to Compel & for Sanctions; Doc. 95, Min. Entry Dated Apr. 3, 2013.

[30]   See Oral R. of Hr'g Dated Apr. 3, 2013 (representing that it intended to withdraw the motion to dismiss and to file an answer); Doc. 96, J.G. Wentworth's Answer p. 2 (admitting that it was making an appearance); Doc. 130, Movants' Reply to RSL's Resp. to Mots. to Dismiss p. 2 n.1 (acknowledging that J.G. Wentworth withdrew its motion to dismiss).

[31]   Doc. 108, Order Dated June 14, 2013.

[32]   See Doc. 114, RSL & Rapid Settlements' Corrected Mot. for Reconsideration.

[33]   See Doc. 122, Order Dated Aug. 7, 2013.

filed a response,[34] and JGWPT, JLL, and Miller timely replied.[35]

## II.  Legal Standard

The Federal Rules of Civil Procedure authorize a court to dismiss an action against a defendant when the court lacks personal jurisdiction over that defendant.  See Fed. R. Civ. P. 12(b)(2). On a motion to dismiss decided without benefit of an evidentiary hearing, the burden is on the plaintiff to establish a prima facie case in support of jurisdiction.  Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008).

The district court may receive "any combination of recognized methods of discovery," including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis.  Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 241 (5th Cir. 2008)(quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)).  The court resolves all conflicts in the evidence in favor of the plaintiff and accepts as true all of the plaintiff's uncontroverted allegations.  Johnston, 523 F.3d at 609.

A federal court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers jurisdiction and if jurisdiction is consistent with due process

---

[34]    The response does not indicate that it was filed on behalf of Rapid Settlements as well, but the court assumes that it was.  See Doc. 126, RSL's Resp. to Mots. to Dismiss p. 1.

[35]    See id.; Doc. 130, Movants' Reply to RSL's Resp. to Mots. to Dismiss.

7

under the United States Constitution.  <u>Johnston</u>, 523 F.3d at 609.

In Texas, the long-arm statute permits personal jurisdiction to the

full extent allowed by the Due Process Clause.  <u>Id.</u>

> The Due Process Clause . . . permits the exercise of
> personal jurisdiction over a nonresident defendant when
> (1) that defendant has purposefully availed himself of
> the benefits and protections of the forum state by
> establishing "minimum contacts" with the forum state; and
> (2) the exercise of jurisdiction over that defendant does
> not offend "traditional notions of fair play and
> substantial justice."

<u>Latshaw v. Johnston</u>, 167 F.3d 208, 211 (5th Cir. 1999)(quoting <u>Int'l</u>

<u>Shoe Co. v. Wash.</u>, 326 U.S. 310, 316 (1945)).

A defendant establishes minimum contacts with a state when his

"conduct and connection" with that state are significant enough

that the defendant "should reasonably anticipate being haled into

court" in that state.  <u>Nuovo Pignone, SpA v. STORMAN ASIA M/V</u>, 310

F.3d 374, 379 (5th Cir. 2002)(quoting <u>Burger King Corp. v.</u>

<u>Rudzewicz</u>, 471 U.S. 462, 474 (1985)).  The defendant must

"purposely avail[] itself of the privilege of conducting activities

within the forum state, thus invoking the benefits and protections

of its laws."  <u>Nuovo Pignone, SpA</u>, 310 F.3d at 379 (quoting <u>Burger</u>

<u>King Corp.</u>, 471 U.S. at 475).

"[C]ontinuous and systematic general business contacts" are

grounds for the exercise of general jurisdiction over a nonresident

defendant for any cause of action regardless of whether the claim

arose from specific activity within the forum.  <u>Luv n' care, Ltd.</u>

<u>v. Insta-Mix, Inc.</u>, 438 F.3d 465, 469 (5th Cir. 2006)(quoting

8

<u>Helicopteros Nacionales de Colom., S.A. v. Hall</u>, 466 U.S. 408, 414 n.9, 415 (1984)).  Specific jurisdiction may exist if the asserted cause of action "aris[es] out of or [is] related to the defendant's contact[s] with the forum."  <u>Luv n' care, Ltd.</u>, 438 F.3d at 469 (citing <u>Helicopteros Nacionales de Colom., S.A.</u>, 466 U.S. at 414 n.8).  Upon a showing of minimum contacts, the court considers the second prong of the due process analysis, whether personal jurisdiction comports with "traditional notions of fair play and substantial justice." <u>Ruston Gas Turbines, Inc. v. Donaldson Co.</u>, 9 F.3d 415, 421 (5th Cir. 1993).

As a rule, a foreign parent company cannot be subject to personal jurisdiction based on the presence and business operation of a subsidiary within the forum state.  <u>Hargrave v. Fibreboard Corp.</u>, 710 F.2d 1154, 1159 (5th Cir. 1983).  However, a court may look beyond a corporation's lack of direct contacts with the forum state and exercise personal jurisdiction over an alter ego of a corporation that is subject to the court's jurisdiction.  <u>Jackson v. Tanfoglio Giuseppe, S.R.I.</u>, 615 F.3d 579, 586 (5th Cir. 2010).  "The rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." <u>Hargrave</u>, 710 F.2d at 1159.

The presumption in favor of the separateness of a parent

company and its subsidiaries may only be overcome by clear
evidence, which requires "something beyond the subsidiary's mere
presence within the bosom of the corporate family." <u>Dickson Marine
Inc. v. Panalpina, Inc.</u>, 179 F.3d 331, 338 (5th Cir. 1999)(quoting
<u>Donatelli v. Nat'l Hockey League</u>, 893 F.2d 459, 465-66 (1st Cir.
1990)).  The Fifth Circuit, in <u>Hargrave</u>, discussed several factors
to consider in deciding whether to impute the activities of a
subsidiary to its parent for jurisdictional purposes.  The factors
are:

> (1) amount of stock owned by the parent of the
> subsidiary; (2) [whether] the two corporations have
> separate headquarters; (3) [whether] they have common
> officers and directors; (4) [whether] they observe
> corporate formalities; (5) [whether] they maintain
> separate accounting systems; (6) [whether] the parent
> exercise[s] complete authority over general policy; [and]
> (7) [whether] the subsidiary exercise[s] complete
> authority over daily operations.

<u>Dickson Marine Inc.</u>, 179 F.3d at 339 (citing <u>Hargrave</u>, 710 F.2d at
1160); <u>see also</u> <u>Equal Emp't Opportunity Comm'n v. Bass Pro Outdoor
World, LLC</u>, 884 F.Supp.2d 499, 532 (S.D. Tex. 2012)(listing the
same factors).

### III. Analysis

The movants argue that none has sufficient contacts with the
State of Texas to warrant either specific or general jurisdiction.
RSL focuses its response on the extent of only JLL's contacts with
the state and the theory of alter ego.

### A.  <u>Movants' Evidence</u>

JGWPT, Miller, and JLL have supported their contentions that each lacks the requisite minimum contacts with Texas through the submission of separate affidavits.

**1. JGWPT**

Miller, JGWPT's chief executive officer, attested to JGWPT's lack of contact with Texas.[36] JGWPT, a limited liability holding company, was formed under the laws of the State of Delaware and maintained a principal place of business in Pennsylvania, Miller stated.[37] Miller explained that JGWPT was a holding company that did not "conduct purchases, sales, or advertising related to any structured settlement payment rights, lottery payment streams, and/or annuities."[38] Miller affirmed that JGWPT had its own board of directors and officers and maintained its own books and bank accounts.[39]

According to Miller, JGWPT was not authorized to do business in Texas, did not maintain offices, employees, or agents in Texas, did not pay taxes to Texas, did not maintain any financial account in Texas, did not own or lease real or personal property in Texas, did not enter into any service contract with a Texas resident except for counsel in this matter, and did not manufacture goods,

---

[36]   See Doc. 38-2, Ex. B to JGWPT's Mot. to Dismiss, Miller's Aff. Dated June 2012.

[37]   Id. ¶ 3.

[38]   Id. ¶¶ 4, 5.

[39]   Id. ¶ 4.

11

distribute products, or provide services in Texas.[40]

## 2. Miller

Miller also provided testimony regarding his own lack of contact with Texas, stating that he was a resident of Pennsylvania who had never lived or worked in Texas, had never personally engaged in business in Texas, and had not visited Texas in the prior ten years.[41] Miller further stated that he did not employ any person in Texas, had never recruited Texas residents for employment, did not maintain an office in Texas, did not own or lease real or personal property in Texas, did not maintain a financial account in Texas, and had never entered into a services contract with a Texas resident other than counsel in this matter.[42]

## 3. JLL

JLL submitted the affidavit of Paul Levy ("Levy"), its managing director.[43] Levy averred that JLL was incorporated in Delaware and maintained its principal place of business in the State of New York.[44] Levy explained that JLL was "engaged in the business of sponsoring, advising and managing private equity funds,

---

[40]   Id. ¶¶ 3, 5, 6.

[41]   See Doc. 40-2, Ex. B to Miller's Mot. to Dismiss, Miller's Aff. Dated June 22, 2012 ¶ 2.

[42]   Id. ¶ 3.

[43]   See Doc. 41-2, Ex. B to Def. JLL's Motion to Dismiss, Levy's Aff. Dated June 25, 2012.

[44]   Id. ¶ 3.

12

which funds hold ownership interests in various portfolio companies" and did not "conduct purchases, sales, or advertising in Texas related to any structured settlement payment rights, lottery payment streams, and/or annuities."[45]   Levy affirmed that JLL had its own board of directors, officers, and employees.[46]

According to Levy, JLL was not authorized to do business in Texas, did not maintain offices or employees in Texas, did not pay taxes to Texas, did not maintain any financial account in Texas, did not own or lease real or personal property in Texas, did not provide services to individual residents of Texas, and did not manufacture goods, distribute products, or provide services in Texas.[47]

## B.  **RSL's Evidence**

The evidence that RSL attached to its response consists of internet press releases, website printouts, internet news articles, a printout from the Texas Secretary of State, and a Wikipedia article.[48]   In their reply, movants argue that four of the exhibits

---

[45]   Id. ¶¶ 4, 6.

[46]   Id.

[47]   Id. ¶¶ 3-5.

[48]   See, generally, Doc. 126-3, Ex. A to RSL's Resp. to Mots. to Dismiss, "JGWPT Holdings Completes $215 Million Securitization" (Nov. 19, 2012); Doc. 126-4, Ex. B to RSL's Resp. to Mots. to Dismiss, "JGWPT Holdings Announces $232 Million Fixed Rate Asset Backed Securitization" (Mar. 20, 2013); Doc. 126-5, Ex. C to RSL's Resp. to Mots. to Dismiss, "J.G. Wentworth;" Doc. 126-6, Ex. D to RSL's Resp. to Mots. to Dismiss, Website Printout from llrpartners.com; Doc. 126-7, Ex. E to RSL's Resp. to Mots. to Dismiss, Website Printout from jgwpt.com; Doc. 126-8, Ex. F to RSL's Resp. to Mots. to Dismiss, "JLL Partners Cleans House at First Community Bank" (Nov. 1, 2009); Doc. 126-10, Ex. H to RSL's Resp. to

are inadmissible hearsay.[49]  Although the court agrees that many of RSL's exhibits contain hearsay, the court searches all exhibits for any indication that the court may assert personal jurisdiction over movants.

Two press releases, one from what appears to be JLL's website and one from what appears to J.G. Wentworth's website, announced securitizations by JGWPT.[50]  The latter one noted that JGWPT was based in Radnor, Pennsylvania, with offices in Boynton Beach, Florida.[51]

A website printout about J.G. Wentworth touted it as "the nation's leading purchaser of illiquid annuity payments directly from consumers" and attributed the strengthening of its "leading market position" to the 2011 acquisition of Peachtree Financial.[52] Another website printout, apparently from JGWPT's website provided short informational blurbs on J.G. Wentworth, noting that it was

---

Mots. to Dismiss, "J.G. Wentworth Goes the Recap Route" (Jan. 28, 2013); Doc. 126-11, Ex. I to RSL's Resp. to Mots. to Dismiss, Tex. Sec'y of State Corp. Filing Info.; Doc. 126-12, Ex. J to RSL's Resp. to Mots. to Dismiss, Wikipedia Article.

[49]    Movants cite <u>Cooper v. McDermott International, Inc.</u>, No. 93-2907, 1995 WL 450209, at *5 (5th Cir. 1995)(unpublished), which states that, as hearsay, news articles cannot overcome a motion to dismiss that is supported by contradictory affidavit testimony.

[50]    <u>See</u> Doc. 126-3, Ex. A to RSL's Resp. to Mots. to Dismiss, "JGWPT Holdings Completes $215 Million Securitization" (Nov. 19, 2012); Doc. 126-4, Ex. B to RSL's Resp. to Mots. to Dismiss, "JGWPT Holdings Announces $232 Million Fixed Rate Asset Backed Securitization" (Mar. 20, 2013).

[51]    Doc. 126-4, Ex. B to RSL's Resp. to Mots. to Dismiss, "JGWPT Holdings Announces $232 Million Fixed Rate Asset Backed Securitization" (Mar. 20, 2013).

[52]    Doc. 126-5, Ex. C to RSL's Resp. to Mots. to Dismiss, "J.G. Wentworth."

based in Radnor, Pennsylvania, and Peachtree Financial Solutions, noting it was based in Boynton Beach, Florida.[53]  A third website printout of what appears to be LLR Partners'[54] website describing its portfolio holdings included an entry for JGWPT, which it described as a "combined entity of J.G. Wentworth and Peachtree Financial Solutions."[55]  The entry stated that LLR Partners invested in Peachtree Financial Solutions in 2004 and then sold a substantial portion of its investment when Peachtree Financial Solutions made a public offering but that LLR Partners remained an investor in the merged entity.[56]

Two internet articles addressed JLL's activities.[57]  One dated November 1, 2009, discussed "housecleaning" in the management of First Community Bank NA by its majority shareholder, JLL.[58]  The news piece indicated that JLL "injected $75 million into FC Holdings at the end of 2007 when the bank paid $32.5 million for First Crocket Bancshares Inc." and that JLL's managing director and

---

[53]     Doc. 126-7, Ex. E to RSL's Resp. to Mots. to Dismiss, Website Printout from jgwpt.com.

[54]     RSL describes LLR Partners as "a former investor in Peachtree." Doc. 126, RSL's Resp. to Mots. to Dismiss p. 16.

[55]     Doc. 126-6, Ex. D to RSL's Resp. to Mots. to Dismiss, Website Printout from llrpartners.com.

[56]     Id.

[57]     See Doc. 126-8, Ex. F to RSL's Resp. to Mots. to Dismiss, "JLL Partners Cleans House at First Community Bank" (Nov. 1, 2009); Doc. 126-10, Ex. H to RSL's Resp. to Mots. to Dismiss, "J.G. Wentworth Goes the Recap Route" (Jan. 28, 2013).

[58]     Doc. 126-8, Ex. F to RSL's Resp. to Mots. to Dismiss, "JLL Partners Cleans House at First Community Bank (Nov. 1, 2009).

a JLL principal were "parachuting into the [First Community Bank NA's] boardroom."[59]  The other, which is dated January 28, 2013, discussed changes in the dividend recap market, featuring information about J.G. Wentworth's "desire to obtain a debt package" following "published news reports . . . that J.G. Wentworth's owner and private equity firm JLL Partners abandoned plans to sell the structured settlement company for $1 billion and opted to get debt financing instead."[60]

The corporate filing information from the Texas Secretary of State provided details about JLL Management, LLC.[61]  The Wikipedia article recounted JLL's corporate history and provided lists of its equity funds and its portfolio companies.[62]  J.G. Wentworth was among those listed as portfolio companies.[63]  The article stated that "JLL experienced an early success with the leveraged buyout of Rexene Corporation, a Texas-based chemical company."[64]

C.  **Discussion**

RSL's evidence, which is the same as was submitted at the time

---

[59]    Id.

[60]    Doc. 126-10, Ex. H to RSL's Resp. to Mots. to Dismiss, "J.G. Wentworth Goes the Recap Route" (Jan. 28, 2013).

[61]    See Doc. 126-11, Ex. I to RSL's Resp. to Mots. to Dismiss, Tex. Sec'y of State Corp. Filing Info.

[62]    See Doc. 126-12, Ex. J to RSL's Resp. to Mots. to Dismiss, Wikipedia Article.

[63]    See id.

[64]    Id.

of its motion for reconsideration of the court's denial of jurisdictional discovery, has less impact on the court's present deliberation than it did in relation to the motion for reconsideration. In the court's order on the motion for reconsideration, it found the evidence insufficient to establish even a "preliminary showing of jurisdiction" over the movants.[65] RSL's burden is greater at this stage; it must establish a prima facie case of jurisdiction. See Johnston, 523 F.3d at 609.

RSL argues that JLL has sufficient minimum contacts with Texas that the assertion of jurisdiction comports with the Due Process Clause. In support of this argument, RSL states that JLL owns F.C. Holdings,[66] and F.C. Holdings, a Texas corporation, is the parent company of First Community Bank NA, which is located in Houston. RSL further contends that JLL's investment in FC Holdings at the time of First Community Bank NA's purchase of First Crockett Bancshares Inc. was a contact with Texas.

RSL also points to the Texas Secretary of State report concerning JLL Management, LLC, as evidence that JLL has a location in Magnolia, Texas. However, the report provided information on an entity of an obviously different name and did not mention JLL or

---

[65]    Doc. 122, Order Dated Aug. 7, 2013 p. 4 (quoting Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005)).

[66]    This assertion, based on an internet article, is directly contradictory to the testimony of Levy, which stated that JLL/FCH Holdings, not JLL, owned stock in FC Holdings, Inc. See Doc. 126-9, Ex. G to RSL's Resp. to Mots. to Dismiss, Levy's Aff. Dated Sept. 14, 2012 ¶ 13. The court resolves the conflict in favor of RSL, as it must. See Johnston, 523 F.3d at 609.

any other movant.  RSL fails to explain JLL's relationship with JLL Management, LLC.  The report is, thus, irrelevant in determining JLL's contacts with Texas.  The final piece of evidence on which RSL relies is a Wikipedia article that provided historical information about JLL, including a statement that it purchased a Texas-based chemical company.

To the extent RSL's exhibits are apposite, they are merely evidence of corporate ownership, which is not enough, by itself, to establish jurisdiction.  Hargrave, 710 F.2d at 1160 (noting that one-hundred percent stock ownership, along with commonality of officers and directors, is insufficient to establish an alter ego relationship between corporations).  The court does not find RSL's attempts to parlay ownership into jurisdictional contacts at all convincing.

The court also observes that none of the evidence relates to the wrongs allegedly committed by JLL in this instance.  Therefore, RSL's burden is to establish a prima facie case of general jurisdiction through continuous and systematic contacts.  See Luv n' care, Ltd., 438 F.3d at 469.  RSL's evidence of JLL's contacts with Texas does not even come close to meeting that burden.  See Johnston, 523 F.3d at 609 (stating that the test for general jurisdiction "is a difficult one to meet, requiring extensive contacts between a defendant and a forum").

The court turns to RSL's other argument, which relies on the

18

theory of alter ego to establish jurisdiction.   RSL points to information on the websites indicating that JLL owns J.G. Wentworth, that J.G. Wentworth is a subsidiary of JGWPT, and that JGWPT has offices in the same cities as other J.G. Wentworth entities.   RSL argues that JLL's decision not to sell J.G. Wentworth in favor of debt financing indicates J.G. Wentworth's inadequate capitalization and a lack of corporate formalities.   RSL also infers from the information on the internet that JGWPT is more than an holding company, that it derives monetary gain through its subsidiaries, and that JGWPT and J.G. Wentworth are under unified control.   Without citing to evidence, RSL also claims that several J.G. Wentworth entities have no employees whatsoever and borrow from other sister companies.

The majority of these assertions are mere speculation.   The reasonable inferences that can be drawn from the evidence in favor of a finding of alter ego do not begin to overcome the presumption of corporate separateness.   The only <u>Hargrave</u> factor that the evidence clearly demonstrates is majority ownership of subsidiaries.   The evidence suggesting that the entities maintained offices in the same cities is not clear evidence of shared headquarters.   Moreover, RSL fails to produce any evidence of the commonality of officers and directors, the lack of corporate formalities, the absence of separate accounting systems, the parent's domination over general policy, or the subsidiary's lack

of complete authority over daily operations.

RSL has produced far less than that found to be insufficient to establish alter ego jurisdiction in other cases.  For example, in <u>Global 360 Inc. v. Spittin' Image Software, Inc.</u>, CIV.A3:04-CV-1857-L, 2005 WL 625493, at *9 (N.D. Tex. Mar. 17, 2005)(unpublished), the court found evidence of majority ownership by the parent, a common president of parent and subsidiary who exercised authority over all general policies and daily operations, shared headquarters, and closely related accounting systems to be insufficient to exert personal jurisdiction over the subsidiary. In <u>Bass Pro Outdoor World, LLC</u>, 884 F.Supp.2d at 533-34, the court found common ownership, shared headquarters, shared officers and directors, as well as a shared website, shared recruitment forms, shared training, and shared staffing procedures to be insufficient.

RSL has failed to demonstrate the type of domination and control by any of the movants over any of the entities over which the court has jurisdiction to warrant disregarding the presumption of corporate separateness.  Overall, RSL fails to establish that JLL has minimum contacts with Texas or that the contacts of another entity can be imputed to any movant by way of the alter ego doctrine such that the court may exercise personal jurisdiction over any movant in this lawsuit.  Because the court finds the movants to be beyond the reach of the state's long-arm statute, the court need not address the due process concerns.  <u>Hargrave</u>, 710

20

F.2d at 1161 n.4.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that JGWPT's Motion to Dismiss, Miller's Motion to Dismiss, and JLL's Motion to Dismiss all be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 30th  day of August, 2013.

Nancy K. Johnson
United States Magistrate Judge