IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SETTLEMENT FUNDING LLC, et al.,      §
                                     §
      Plaintiffs,                    §
                                     §
v.                                   §      CIVIL ACTION NO. H-12-2044
                                     §
RSL FUNDING, LLC, et al.,            §
                                     §
      Defendants.                    §

_____

RSL FUNDING, LLC,                    §
                                     §
      Third-Party Plaintiff,         §
                                     §
v.                                   §
                                     §
J.G. Wentworth S.S.C. Limited        §
Partnership, et al.,                 §
                                     §
      Third-Party Defendants.        §

**MEMORANDUM, RECOMMENDATION, AND ORDER**

Pending before the court[1] are Plaintiff Settlement Funding,

LLC's ("Settlement Funding") Motion for Partial Summary Judgment on

its tortious-interference claim (Doc. 115); Settlement Funding's

Motion to Strike Defendants Rapid Settlements, Ltd., ("Rapid") and

RSL Funding, LLC's ("RSL") (collectively, "the RSL Parties")

Response to the Motion for Partial Summary Judgment (Doc. 128), and

---

[1]      This case was referred to the undersigned magistrate judge pursuant
to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the
Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 11.

the RSL Parties' Motion to Extend Time (Doc. 133).[2]  The court has considered the motions, every response and reply, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Settlement Funding's Motion for Partial Summary Judgment be **DENIED**.  Settlement Funding's Motion to Strike is **DENIED** and the RSL Parties' Motion to Extend Time is **GRANTED**.

## I.  Case Background

This action involves disputes over business practices between factoring companies competing in the secondary market of acquiring structured settlement payment rights.[3]

### A.  <u>Procedural Background</u>

In 2006, Settlement Funding d/b/a Peachtree Settlement Funding ("Settlement Funding")[4] initiated this lawsuit in the 113th District Court of Harris County, Texas, to enjoin Rapid from enforcing an arbitration provision in an agreement for Rapid's purchase of the structured settlement payments of a Georgia resident, Simmie

---

[2]    Also pending in this case are Settlement Funding, Peachtree Settlement Funding, LLC, J.G. Wentworth S.S.C. Limited Partnership, and J.G. Wentworth Originations, LLC's (collectively, the "Settlement Funding Plaintiffs") Motion for Partial Summary Judgment on RSL's Request for Declaratory Relief (Doc. 138) and the Settlement Funding Plaintiffs' Motion for Partial Summary Judgment on RSL's Claims for Theft of Property, Conversion, Fraudulent Transfer, Alter Ego, Civil Conspiracy, and Wrongful Injunction (Doc. 139).  Those two motions will be addressed in a separate memorandum at a later date.

[3]    <u>See</u> Doc. 1, Notice of Removal p. 2; Doc. 1-2, State Ct. Pleadings.

[4]    The state court pleadings refer to this entity as "Peachtree;" for the sake of simplicity, the court here refers to it as "Settlement Funding."

Bernard King ("King").[5]  Two similar cases were consolidated into the King case, and, after judgment was entered in the King action and one of the consolidated actions, those two cases were severed from the main action and remain in state court.[6]

On August 13, 2010, Settlement Funding filed a supplemental petition, in which it named both Rapid and RSL as defendants.[7] Among other claims, Settlement Funding alleged that the RSL Parties failed to maintain corporate formalities and engaged in willful and intentional interference with multiple assignment agreements of structured settlement payments.[8]  Settlement Funding contemporaneously sought a temporary restraining order, a temporary injunction, and a permanent injunction.[9]

On August 24, 2010, after a hearing, the court granted Settlement Funding's request for a temporary injunction and ordered:

> RSL and/or its agents shall not interfere with [Settlement Funding's] contracts, including but not limited to the case of In re: Transfer of Structured

_____

[5]    See Doc. 124-3, Ex. 1 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., Stewart A. Feldman's ("Feldman") Aff. ¶ 3.

[6]    See Doc. 1, Notice of Removal pp. 2-3; Doc. 124-3, Ex. 1 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., Feldman's Aff. ¶ 3.

[7]    See Doc. 124-5, Ex. 3 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., Settlement Funding's 1st Supplemental Pet.

[8]    See id. p. 3.

[9]    See Doc. 124-6, Ex. 4 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., Settlement Funding's Appl. for TRO & Temp. & Permanent Inj.

> Settlement Payment Rights by Michale M. Parenti; Cause
> No. 2009-46111 in the District Court of Harris County,
> Texas, 157th Judicial District.  RSL and/or its agents
> shall not search court filings to find structured
> settlement agreements with [Settlement Funding] that are
> pending approval and shall not approach any of
> [Settlement Funding's] existing customers or enter into
> any agreements with them.[10]

The court stated that the temporary injunction was to remain in effect until trial, which the court set for October 25, 2010.[11]

The RSL Parties appealed the order, raising five points of error.  See Rapid Settlements, Ltd. v. Settlement Funding, LLC [hereinafter Rapid v. Settlement Funding], 358 S.W.3d 777, 787 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  In an opinion dated January 10, 2012, the Fourteenth Court of Appeals reversed the lower court's order as to scope only, finding the temporary injunction overbroad, and remanded it for a new hearing.  Id. at 781, 790.  The opinion stated, "We agree that this temporary injunction goes beyond simply preserving the status quo pending a trial on the merits."  Id. at 790.  The court found that the temporary injunction imposed "an unreasonable restraint on trade" due to its breadth.  Id.  The record does not reflect that the state court ever held a new hearing on the breadth of the temporary

---

[10]    Doc. 124-7, Ex. 5 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., State District Court Order Dated Aug. 24, 2010; see also Rapid Settlements, Ltd. v. Settlement Funding, LLC [hereinafter Rapid v. Settlement Funding], 358 S.W.3d 777, 789 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

[11]    Doc. 124-7, Ex. 5 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., State District Court Order Dated Aug. 24, 2010.

4

injunction.

In March 2012, RSL filed an amended counterclaim, asserting claims against J.G. Wentworth S.S.C. Limited Partnership, JGWPT Holdings, LLC, ("JGWPT"), David Miller ("Miller"), and JLL Partners, Inc., ("JLL") for the first time.[12]   Those parties were served on June 7, 2012, filed special appearances in state court, and, on July 6, 2012, removed the action to this court.[13]   At the time of removal, J.G. Wentworth Originations, LLC, had been named in a pleading filed in late June 2012 but had not yet been served.[14]

In early 2013, the parties offered to resubmit motions for partial summary judgment that had been filed in state court but were not in the record before this court.[15]   In February and March of 2013, the parties submitted twenty-nine documents that originally had been filed in state court.[16]   This court was concerned that it could not determine which motions that were still germane had not been resolved by the state court and that cases across the nation had addressed similar issues in the more than two years since Settlement Funding originally filed its motion for

---

[12]   See Doc. 1, Notice of Removal pp. 2, 4, 5.

[13]   See id. pp. 1-2, 5.

[14]   See id. p. 2.

[15]   Doc. 106, Mem., Recommendation, & Order Dated May 31, 2013 p. 1.

[16]   Id. p. 2.

partial summary judgment on tortious interference.[17]  The court recommended that all of the motions pending at the time of removal be denied and ordered any motion for partial summary judgment on the issue of tortious interference be filed within thirty days of the filing of the court's order adopting the recommendation.[18]

The recommendation was adopted on June 17, 2013, and, on July 17, 2013, Settlement Funding filed the pending motion for partial summary judgment on tortious interference.[19]  In September 2013, the court adopted the undersigned's recommendation that JGWPT, Miller, and JLL be dismissed for lack of personal jurisdiction.[20]  In October 2013, the Settlement Funding Plaintiffs filed two more motions for partial summary judgment that remain pending.[21]

**B.   Factual Background**

Michale Parenti ("Parenti") contacted Settlement Funding in 2009 to inquire about selling a portion of his structured settlement.[22]  The transaction was completed and approved by a state

---

[17]    Id. pp. 2-3.

[18]    Id. p. 3.

[19]    See Doc. 109, Order Dated June 17, 2013; Doc. 115, Settlement Funding's Mot. for Partial Summ. J.

[20]    See Doc. 131, Mem. & Recommendation Dated Aug. 30, 2013; Doc. 134, Order Dated Sept. 16, 2013.

[21]    See Doc. 138, Settlement Funding Pls.' Mot. for Partial Summ. J. on RSL's Request for Declaratory Relief; Doc. 139, Settlement Funding Pls.' Mot. for Partial Summ. J. on RSL's Cls. for Theft of Property, Conversion, Fraudulent Transfer, Alter Ego, Civil Conspiracy, & Wrongful Inj.

[22]    Doc. 115-6, Ex. F to Settlement Funding's Mot. for Partial Summ. J., Chad Masten's ("Masten") Aff. ¶ 3.

6

court as required by the Texas Structured Settlement Protection Act[23] ("TSSPA").[24]   For almost a year thereafter, Chad Masten ("Masten"), an account executive for Settlement Funding, contacted Parenti about once a month.[25]   In late June 2010, Parenti called Masten to arrange another transfer of payments from his structured settlement.[26]   On July 5, 2010, Parenti and Settlement Funding executed a second Absolute Assignment Agreement ("2010 Agreement").[27]   Settlement Funding applied for state court approval of the 2010 Agreement.[28]

Jim Kelly ("Kelly"), senior account executive for RSL, contacted Parenti after locating, in the Harris County court records, the pending application and the attached 2010 Agreement.[29] Kelly, who understood the documentation to mean that Parenti could

---

[23]     Tex. Civ. Prac. & Rem. Code §§ 141.001-141.007.

[24]     Doc. 115-6, Ex. F to Settlement Funding's Mot. for Partial Summ. J., Masten's Aff. ¶ 3; see also Doc. 115-8, Ex. H to Settlement Funding's Mot. for Partial Summ. J., Jason Sutherland's ("Sutherland") Aug. 24, 2010 Hrg. Test. p. 49.

[25]     Doc. 115-6, Ex. F to Settlement Funding's Mot. for Partial Summ. J., Masten's Aff. ¶ 4.

[26]     Id. ¶ 5; see also Doc. 115-8, Ex. H to Settlement Funding's Mot. for Partial Summ. J., Sutherland's Aug. 24, 2010 Hrg. Test. pp. 49-50.

[27]     Doc. 115-6, Ex. F to Settlement Funding's Mot. for Partial Summ. J., Masten Aff. ¶ 6; see also Doc. 115-2, Ex. B to Settlement Funding's Mot. for Partial Summ. J., Absolute Assignment Agreement.

[28]     See Doc. 115-1, Ex. A to Settlement Funding's Mot. for Partial Summ. J., Jim Kelly's ("Kelly") Aff. ¶ 2 (indicating that, "in roughly July 2010," he reviewed the public court records, finding the pending Parenti approval application).

[29]     See id.; see also Doc. 115-8, Ex. H to Settlement Funding's Mot. for Partial Summ. J., Sutherland's Aug. 24, 2010 Hrg. Test. p. 48 (stating that RSL approached Parenti after the motion to approve the transfer was filed).

cancel the transfer agreement at any time prior to court approval without penalty, contacted Parenti to offer a competing bid.[30] This method (searching court records for transfer-approval applications submitted by RSL's competitors) was one of several used by RSL to locate potential clients.[31]

> In some cases, if approval ha[d] not already been obtained, and if RSL believe[d] the lump sum payment being offered by one of its competitors [was] less than the fair market value of the future payment stream, RSL [possibly would] offer a proposed transferor (the payee under the annuity) more money to transfer the payments to it before the court enter[ed] an order approving the sale of the future payments.[32]

Kelly's competing bid was a "substantial amount" more than what Settlement Funding was offering.[33]  The Parentis followed up on Kelly's offer by visiting RSL's office and meeting with Kelly and one of RSL's attorneys.[34]  While there, the Parentis executed a transfer agreement with RSL.[35]  On July 22, 2010, Nicola Parenti, Parenti's wife, called Masten and informed him that she and Parenti

---

[30]    Doc. 115-1, Ex. A to Settlement Funding's Mot. for Partial Summ. J., Kelly's Aff. ¶ 3.

[31]    Doc. 115-3, Ex. C to Settlement Funding's Mot. for Partial Summ. J., Stewart Feldman's ("Feldman") Aff. ¶ 4.

[32]    Id.

[33]    Doc. 115-10, Ex. J to Settlement Funding's Mot. for Partial Summ. J., Nicole Parenti's Dep. p. 13; see also Doc. 115-7, Ex. G to Settlement Funding's Mot. for Partial Summ. J., Parenti's Dep. p. 21 (stating that it was significantly more than what Settlement Funding was offering).

[34]    Doc. 115-10, Ex. J to Settlement Funding's Mot. for Partial Summ. J., Nicole Parenti's Dep. p. 15.

[35]    Id.; see also Doc. 124-13, Ex. 11 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., Parenti's Aff. p. 1.

wanted to cancel the 2010 Agreement.[36]   Jim Gregory ("Gregory"), director of purchasing for Settlement Funding, contacted Parenti and confirmed that Parenti wanted to cancel the 2010 Agreement so that he could enter a transfer agreement with another company.[37] Parenti testified that he concluded, on his own and after careful consideration, that Settlement Funding's offer was not competitive.[38]

Settlement Funding sent a cease-and-desist letter to RSL regarding the Parenti transfer, one of several cease-and-desist letters Settlement Funding sent to the RSL Parties attempting to stop them from contacting customers with whom Settlement Funding had entered transfer agreements.[39]   Parenti claimed, as of August 17, 2010, that Settlement Funding had "threatened and harassed" him and "attempt[ed] to intimidate and threaten [him], calling [him]

---

[36]    Doc. 115-6, Ex. F to Settlement Funding's Mot. for Partial Summ. J., Masten's Aff. ¶ 8; see also Doc. 124-13, Ex. 11 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., Parenti's Aff. p. 1.   Parenti averred that he canceled the 2010 Agreement before entering into a contract with RSL.   See Doc. 124-13, Ex. 11 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., Parenti's Aff. p. 1.   Parenti's testimony is inconsistent with other record evidence as to when he signed a transfer agreement with RSL vis-a-vis notifying Settlement Funding of his intent to cancel the 2010 Agreement.   This particular inconsistency is not significant, though, because he admitted that he sought to cancel the 2010 Agreement after learning that he "could obtain a substantially better financial arrangement."   Id.   That statement, in the context of the other evidence, indicates that Parenti at least spoke with RSL prior to canceling the contract with Settlement Funding.

[37]    Doc. 115-9, Ex. I to Settlement Funding's Mot. for Partial Summ. J., Gregory's Aff. ¶ 4.

[38]    Doc. 124-13, Ex. 11 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., Parenti's Aff. p. 2.

[39]    See Doc. 115-8, Ex. H to Settlement Funding's Mot. for Partial Summ. J., Sutherland's Aug. 24, 2010 Hrg. Test. pp. 41-43, 48-49.

repeatedly, to get [him] to come back."[40]

According to Jason Sutherland ("Sutherland"), Settlement Funding's vice president of legal affairs, an application for court approval of an agreement between Parenti and RSL was pending before the state court on August 24, 2010, concerning the same structure settlement payments as were the subject of the 2010 Agreement.[41] Yet, on November 19, 2010, a Harris County court entered an order approving the transfer of the same payments from the Parenti structured settlement annuity to Settlement Funding.[42]  The order declared RSL's application for approval of a transfer of Parenti's payments to be impossible and voided that proposed transfer agreement.[43]

## II.  Nondispositive Issues

Before addressing the merits of the summary judgment motion, the court must first address the nondispositive issues raised by the parties.  Settlement Funding filed a motion to strike the RSL Parties' response.  Both the RSL Parties and Settlement Funding objected to evidence submitted by the other.

---

[40]    Doc. 124-13, Ex. 11 to the RSL Parties' Resp. to Settlment Funding's Mot. for Partial Summ. J., Parenti's Aff. pp. 1-2.

[41]    See Doc. 115-8, Ex. H to Settlement Funding's Mot. for Partial Summ. J., Sutherland's Aug. 24, 2010 Hrg. Test. p. 48.

[42]    Doc. 124-12, Ex. 10 to the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J., State District Court Order Dated Nov. 19, 2010.  The RSL Parties' refer to this order in their brief; however, the court found nothing in the record explaining how and when Settlement Funding won Parenti back as a customer.

[43]    Id. pp. 2, 4-5.

10

## A.  <u>Motion to Strike Response</u>

Settlement Funding moves to strike the RSL Parties' response to the pending motion for partial summary judgment on the basis that it was untimely filed.  The RSL Parties argue that the motion was timely filed under the rules or, alternatively, that the court should exercise its discretion and deem it timely filed.

Federal Rule of Civil Procedure ("Rule") 6(a) explains how to compute time periods specified in rules, court orders, and statutes that do not specify methods of computation.  Rule 6(b) allows a court to extend the deadline for good cause upon motion made after the time period has expired if the movant failed to act because of excusable neglect.

Settlement Funding filed its motion for partial summary judgment on the issue of tortious interference on July 17, 2013, making the response due on August 7, 2013.[44]  The RSL Parties filed an unopposed motion requesting that the deadline be moved to August 17, 2013.[45]  On August 5, 2013, the court signed the proposed order submitted by the RSL Parties, which set August 17, 2013, a Saturday, as the deadline for filing the response.[46]  The RSL Parties filed their response on the following Monday, August 19,

---

[44]     <u>See</u> Doc. 115, Settlement Funding's Mot. for Partial Summ. J.

[45]     <u>See</u> Doc. 118, the RSL Parties' Mot. to Extend Deadline to Respond to Settlement Funding's Mot. for Partial Summ. J.

[46]     <u>See</u> Doc. 119, Proposed Order; Doc. 120, Order Dated Aug. 5, 2013.

11

2013.[47]

The court agrees with Settlement Funding that the computation rules in Rule 6[48] do not apply when the court order includes a date certain deadline and that the filing of the RSL Parties' response two days after the deadline it requested is inexcusable. Nonetheless, the court is unwilling to strike the response when it was filed on the first business day after the deadline, it responds to a dispositive motion, and its tardiness did not prejudice Settlement Funding.

That said, the court is beyond frustrated with both parties' sloppy lawyering, inattentiveness to deadlines, continuances, and pettiness, all of which have become hallmarks of this case. Therefore, consider this a call to improve and a warning that the court at any time may exercise its authority to enter sanctions for failure to comply with court orders and deadlines.

## B.   <u>Evidentiary Objections</u>

The RSL Parties challenge five pieces of evidence submitted by Settlement Funding.  From Masten's affidavit, the RSL Parties object to the following statements as hearsay:

- At that time [Parenti] was very pleased that it was progressing quickly and that we had obtained a

---

[47]     <u>See</u> Doc. 124, the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J.

[48]     In fact, none of Rule 6 applies to date certain deadlines.

hearing date within the same month.[49]

This statement is admissible under the hearsay exception for statements of the declarant's then-existing mental, emotional, or physical condition because it conveys Parenti's pleasure with the speed of the transfer process. See Fed. R. Evid. 803(3). The RSL Parties' objection is **OVERRULED**.

- During my July 21, 2010 call with Parenti, he continued to indicate that he was pleased with the progress of his agreement with [Settlement Funding] and that he looked forward to completing the transaction.[50]

This statement is also admissible pursuant to Federal Rule of Evidence 803(3) because it reflects Parenti's feelings about the transfer process. The RSL Parties' objection is **OVERRULED**.

- Nicola Parenti informed me during this telephone call that a competitor of [Settlement Funding] had come to their home, without prior notice or any contact by Parenti, and offered to take over their structured settlement transfer.[51]

This statement is inadmissible as hearsay because it is offered to prove the truth of its content with regard to a competitor of Settlement Funding visiting the Parentis at their home without notice and with regard to the offer that was made. See Fed. R. Evid. 801(c)(2). The RSL Parties' objection is **SUSTAINED**.

- Nicola Parenti refused to tell me the name of the competitor, but she said that the company was "local."[52]

This statement is also inadmissible pursuant to Federal Rule of Evidence 801(c)(2) because it is offered

---

[49]    Doc. 115-6, Ex. F to Settlement Funding's Mot. for Partial Summ. J., Masten's Aff. ¶ 6.

[50]    Id. ¶ 7.

[51]    Id. ¶ 8.

[52]    Id.

to prove that the competitor was local.  The RSL Parties' objection is **SUSTAINED**.

- She stated that she and Parenti wanted to cancel the structure settlement transfer pending with [Settlement Funding].[53]

This statement is admissible under the hearsay exception for statements of the declarant's then-existing mental, emotional, or physical condition because it conveys Nicola Parenti's desire at the time to cancel the transfer agreement.  See Fed. R. Evid. 803(3).  The RSL Parties' objection is **OVERRULED**.

In the affidavit of Jim Gregory, director of purchasing for Settlement Funding, the RSL Parties object to the following statements as hearsay:

- Parenti confirmed to me that he wanted to cancel his pending transfer with [Settlement Funding] because he was going to enter into an agreement with a competing company.[54]

This statement is admissible under Federal Rule of Evidence 803(3) because it indicates Parenti's then-existing state of mind, specifically his intent to cancel the 2010 Agreement and his motive for doing so.  The RSL Parties' objection is **OVERRULED**.

- He confirmed that this competing company had approached him at his home unexpectedly.[55]

This statement is inadmissible because it is offered for its truth regarding the competitor's unexpected visit to the Parenti's home.  See Fed. R. Evid. 801(c)(2).  The RSL Parties' objection is **SUSTAINED**.

---

[53]   Id.

[54]   Doc. 115-9, Ex. I to Settlement Funding's Mot. for Partial Summ. J., Gregory's Aff. ¶ 4.

[55]   Id.

- He identified that competitor as RSL Funding.[56]

    This statement is inadmissible because it is offered for its truth regarding the identity of the competitor. See Fed. R. Evid. 801(c)(2). The RSL Parties' objection is **SUSTAINED**.

- He informed me that there was "no penalty," and "Get your attorney and bring it on."[57]

    This statement falls within the exception for then-existing condition because it reveals Parenti's state of mind.  See Fed. R. Evid. 803(3).  The RSL Parties' objection is **OVERRULED**.

- At this point, I informed him that I would relay his position to our legal department and ended the call.[58]

    This statement is not asserted for the truth of the matter asserted.  See Fed. R. Evid. 801(c)(2).  The RSL Parties' objection is **OVERRULED**.

The RSL Parties also object to the use of Parenti and Nicola Parenti's depositions because the copies submitted by Settlement Funding did not include certification pages.  Settlement Funding attached certification pages to its response to the RSL Parties' objections.[59]  The objections are **OVERRULED**.

Finally, the RSL Parties object to the use of the hearing transcript from the temporary injunction hearing held before the

---

[56]    Id.

[57]    Id. ¶ 5.

[58]    Id. ¶ 6.

[59]    See Doc. 129-2, Ex. B to Settlement Funding's Objs. to the RSL Parties' Summ. J. Evid. & Resp. to the RSL Parties' Objs. to Summ. J. Evid., Reporter's Certification of Parenti's Dep.; Doc. 129-3, Ex. C. to Settlement Funding's Objs. to the RSL Parties' Summ. J. Evid. & Resp. to the RSL Parties' Objs. to Summ. J. Evid., Reporter's Certification of Nicola Parenti's Dep.

state trial court in this case because the testifying witness, Sutherland, lacked personal knowledge and was not qualified as an expert on damages and the testimony included conclusions of law and was speculative and conclusory.

A lay witness may provide opinion testimony as long as the opinions offered "are (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  As an executive for Settlement Funding, Sutherland's opinions on damages were not based on scientific, technical, or specialized knowledge, but on his personal knowledge from participation in Settlement Funding's business matters.  See Fed. R. Evid. 701, advisory committee's note, 2000 Amends. (citing Lightning Lub, Inc. v. Witco Corp., 4 F.3d 1153 (3$^d$ Cir. 1993).  As for the RSL Parties' objections to Sutherland's testimony on the basis that it was speculative and factually and legally conclusory, the court does not find the testimony as a whole to suffer these flaws and does not rely on any inadmissible statements.  The objection is **OVERRULED**.

Settlement Funding also raises objections to the evidence submitted by the RSL Parties.  The first category consists of general objections to the RSL Parties' characterization of the facts and to the RSL Parties' attempt "to create a fact issue by

16

contradicting their own admissions."[60]  Settlement Funding does not point out specific evidence to which it objects on this basis; therefore, the objection is **OVERRULED**.

Settlement Funding objects to "the conclusory, self-serving, contradictory, sham" affidavit of Stewart A. Feldman ("Feldman").[61] As Settlement Funding points out, Feldman's affidavit affirms that the RSL Parties' response contains all true and correct facts but does not outline any facts, other than his position as the chief executive officer of RSL and background information on this case. Settlement Funding does not take issue with any of the information contained in the affidavit but objects to the blanket affirmance of all facts in the RSL Parties' brief.  With regard to that statement only, the objection is **SUSTAINED**.

Settlement Funding also argues that the affidavit is "an improper attempt to create a fact issue where none exists by contradicting prior admissions" regarding the RSL Parties' knowledge at the time of their solicitation of Parenti.[62]  The affidavit contains no assertions about Parenti's structured settlement payments or the transfer negotiations.  The objection is **OVERRULED**.

---

[60]    Doc. 129, Settlement Funding's Objs. to the RSL Parties' Summ. J. Evid. & Resp. to the RSL Parties' Objs. to Summ. J. Evid. p. 3.

[61]    Id. p. 4.

[62]    Id. p. 5.

The RSL Parties submitted an Absolute Assignment Agreement dated July 18, 2009, as evidence of the contract between Settlement Funding and Parenti with which the RSL Parties are accused of interfering.  Settlement Funding objects to that evidence because, it asserts that the agreement in issue was dated July 3, 2010. Masten's affidavit confirms that the alleged interference occurred in connection with a July 2010 assignment agreement between the parties, not the first one they entered in the summer of 2009.[63] The objection is **SUSTAINED**.

Settlement Funding objects to the RSL Parties' submission of Settlement Funding's summary judgment motion filed in this case that was granted and led to that judgment being severed.  According to Settlement Funding, the underlying transfer agreement in that action differed from the Parenti contract.  As the court does not consider that motion in deciding the presently pending motion, the objection is **DENIED AS MOOT**.

Finally, Settlement Funding objects to Parenti's affidavit as contradictory to his prior testimony and admissions.  It claims that Parenti and his wife testified at their depositions "that RSL specifically referred to Settlement Funding's transfer agreement and told them that RSL could offer them substantially more money

---

[63]   See Doc. 115-6, Ex. F to Settlement Funding's Mot. for Partial Summ. J., Masten's Aff. ¶¶ 3-5.

than Settlement Funding."[64]

In his affidavit dated August 17, 2010, Parenti stated that he canceled the contract with Settlement Funding and entered into an agreement with RSL, that he and his wife were threatened by Settlement Funding after that time, and that he was not induced into cancelling his contract.[65] At his deposition two months later, Parenti stated that Kelly told Parenti that Kelly could offer more money than Settlement Funding.[66]   In response to the question whether Kelly was aware that Parenti had entered into a contract with Settlement Funding, he answered that he did not know.[67]   And Parenti said, "I believe so, yeah." when asked whether Kelly referred more generally to Settlement Funding offering Parenti money.[68]   At her deposition in October 2010, Nicola Parenti testified that Kelly told her an amount that he could offer, which was a substantial amount more than what Settlement Funding was offering.[69] She confirmed that Kelly referred to a contract between

---

[64]    Doc. 129, Settlement Funding's Objs. to the RSL Parties' Summ. J. Evid. & Resp. to the RSL Parties' Objs. to Summ. J. Evid. p. 5 (citing Doc. 115-7, Ex. G to Settlement Funding's Mot. for Partial Summ. J., Parenti's Dep. pp. 21, 22; Doc. 115-10, Ex. J to Settlement Funding's Mot. for Partial Summ. J., Nicola Parenti's Dep. pp. 13, 14).

[65]    Doc. 124-13, Ex. 11 to the RSL Parties' Resp. to Settlment Funding's Mot. for Partial Summ. J., Parenti's Aff. pp. 1-2.

[66]    Doc. 115-7, Ex. G to Settlement Funding's Mot. for Partial Summ. J., Parenti's Dep. p. 21.

[67]    Id. p. 22.

[68]    Id.

[69]    Doc. 115-10, Ex. J to Settlement Funding's Mot. for Partial Summ. J., Nicola Parenti's Dep. p. 13.

Parenti and Settlement Funding.[70]

Under the federal rules, affidavits supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A party cannot defeat summary judgment by introducing an affidavit that contradicts, without explanation, prior deposition testimony. S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996); see also Copeland v. Wasserstein, Perella & Co., 278 F.3d 472, 482 (5th Cir. 2002)(requiring an explanation when the only evidence creating a genuine issue of material fact to avoid summary judgment is an affidavit that conflicts with deposition testimony).

Parenti's affidavit was signed prior to his deposition, and his testimony at the deposition did not directly contradict the statements in his affidavit. The objection is **OVERRULED**.

### III. Settlement Funding's Partial Summary Judgment Motion

Based on the facts related to the agreement with Parenti and the hearing testimony of Sutherland regarding damages, Settlement Funding argues that it is entitled to a permanent injunction to prevent the RSL Parties from "interfering with Settlement Funding's transfer agreements."[71]

---

[70]   Id. p. 14.

[71]   Doc. 115, Settlement Funding's Mot. for Partial Summ. J. p. 24.

A.  <u>Summary Judgment Standard</u>

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also Boston Old</u>

<u>Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

**B.   <u>Tortious Interference Standard</u>**

A claim for tortious interference with a contract may be established by proof that (1) a contract existed; (2) the defendant "willfully and intentionally interfered with that contract;" (3) the interference proximately caused damage; and (4) the plaintiff suffered actual damages.  <u>Butnaru v. Ford Motor Co.</u>, 84 S.W.3d 198, 207 (Tex. 2002).  The plaintiff bears the burden of producing evidence that "the defendant knowingly induced one of the contracting parties to breach its contract obligations."  <u>Rimkus Consulting Grp., Inc. v. Cammarata</u>, 688 F. Supp.2d 598, 674-75 (S.D. Texas 2010)(citing Texas cases).  Justification is an affirmative defense to a claim of tortious interference with a contract.  <u>Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.</u>, 29 S.W.3d 74, 80 (Tex. 2000)(citing <u>Tex. Beef Cattle Co. v. Green</u>, 921 S.W.2d 203, 211 (Tex. 1996)).

**C.   <u>Discussion</u>**

Settlement Funding argues that the Fourteenth Court of Appeals "determined that the state court did not abuse its discretion in finding that Settlement Funding pleaded a cause of action for tortious interference with existing contracts and established a

22

probable right to relief therefrom."[72] The RSL Parties contend that the court did not discuss Settlement Funding's probable right to relief on its tortious-interference claim, limiting its ruling to the scope of the temporary injunction.[73] Both sides are correct, which ultimately favors Settlement Funding.

The appellate court quoted the lower court's temporary injunction order that found Settlement Funding had pled "a cause of action for tortious interference with existing contracts and established a probable right to relief therefrom." See Rapid v. Settlement Funding, 358 S.W. 3d at 789 (quoting trial court's order). Without addressing that issue further, the court affirmed the imposition of a temporary injunction but found fault with its breadth, stating that it went "beyond simply preserving the status quo" and resulted in an unfair restraint on trade. Id. at 790. The court remanded the case for the trial court to determine "appropriate geographic limitations and whether [the RSL Parties] may enter into agreements with [Settlement Funding's] clients when they have not initiated the contact." Id.

Under Texas law, a court may enter a temporary injunction if the applicant proves: "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." Butnaru, 84

---

[72]     Id. p. 5.

[73]     Doc. 124, the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J. p. 5.

S.W.3d at 204.   The elements of proof confirm that a temporary injunction may issue only if the applicant asserts a viable cause of action.   Even though the court did not explicitly articulate its reasoning or explain the contours of a tortious-interference claim under the circumstances here, it did implicitly find, by validating the issuance of a temporary injunction, that Settlement Funding pled a tortious-interference cause of action based on the facts in this case.   If it had not found that element met, the court would have reversed the temporary injunction in its entirety.[74]

Without a doubt, an analysis of the tortious-interference claim by the state appellate court would have provided useful guidance.   Regardless, this court will not analyze anew an issue that already has been decided on appeal in this very case.[75]   The court of appeals decision is law of the case, and this court finds no compelling reason to overrule the state appellate court's

---

[74]   The court disagrees with the RSL Parties' suggestion that the Fourteenth Court of Appeals comment that "a temporary injunction is not a trial on the merits, and we may not review the merits of the underlying litigation on appeal from a temporary injunction order" means that the abuse of discretion review standard prevented the court from deciding whether a tortious-interference claim could be maintained under the circumstances of this case.   See Doc. 124, the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J. p. 6 (citing Rapid v. Settlement Funding, 358 S.W.3d at 788).   In reviewing whether the temporary injunction was valid, the appellate court was required to determine whether the trial court abused its discretion in deciding that Settlement Funding had a probable right to the relief sought.   For the trial court to have found a probable right to relief based on an invalid legal claim would have amounted to abuse of discretion.

[75]   The Fourteenth Court of Appeals raised the concern whether who initiated the contact made a difference.   The second element of a tortious-interference claim, which requires proof that the defendant interfered "willfully and intentionally," subsumes the issue.   Cf. Butnaru, 84 S.W. 3d at 207 (listing the elements of a tortious-interference claim).

decision.   Thus, as a matter of law in this case, structured settlement transfer agreements are subject to claims of tortious interference prior to the court approval required by the TSSPA.[76]

With the question of whether Settlement Funding can assert a tortious-interference claim resolved, the next issue to be addressed is whether Settlement Funding has established, through competent summary judgment evidence, each of the elements of a tortious-interference claim.  Settlement Funding misapprehends its burden when it states that the only two issues left to resolve are "the proper scope of the permanent injunction requested by Settlement Funding" and "whether [the RSL Parties] are justified in interfering with Settlement Funding's transfer agreements."[77] Because Settlement Funding is now seeking summary judgment on its tortious-interference claim, not merely a temporary injunction, it must first demonstrate that it is entitled to summary judgment by pointing to undisputed competent evidence that establishes each element of its tortious-interference claim.[78]  If it carries its burden, then the RSL Parties' affirmative defense of justification becomes an issue.  The proper scope of a permanent injunction does

---

[76]      The only case cited in connection with the pending motion that is directly on point is <u>Settlement Capital Corp. v. BHG Structured Settlements, Inc.</u>, 319 F. Supp.2d 729 (N.D. Tex. 2004).  Without much discussion, the court in that case found that an agreement for the purchase of a structured settlement was subject to improper interference.  <u>Id.</u> at 733.

[77]      Doc. 115, Settlement Funding's Mot. for Partial Summ. J. p. 2.

[78]      Settlement Funding may not rely on the state court's decision that it presented sufficient evidence to meet each element of a temporary injunction. The summary judgment standard is decidedly more rigorous.

not become an issue unless the court has resolved all of the merits in favor of Settlement Funding.

The RSL Parties do not challenge the existence of a contract between Parenti and Settlement Funding. They do, however, challenge Settlement Funding's assertion that RSL willfully and intentionally interfered with that contract. In order to show willful and intentional interference, a plaintiff must show that the defendant took an active part in persuading a party to breach its contract. Davis v. HydPro, Inc., 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied).

> Merely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach. It is necessary that there be some act of interference or of persuading a party to breach, for example by offering better terms or other incentives, for tort liability to arise.

Id. (quoting Texaco, Inc. v. Pennzoil, Co., 729 S.W.2d 768, 803 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.)(citations omitted)); see also Dunn v. Calahan, No. 03-05-00426-CV, 2008 WL 5264886, at *3 (Tex. App.—Austin Dec. 17, 2008, pet. denied)(unpublished). The defendant must have acted "with the knowledge or belief that interference with a contract would result" or was substantially certain to result. Dunn, 2008 WL 5264886, at *3 (citing Sw. Bell Tel. Co. v. John Carlo Tex., Inc., 843 S.W.2d 470, 472 (Tex. 1992)).

The evidence shows that Kelly, on behalf of RSL, located the

26

2010 Agreement in court records, affirmatively reached out to Parenti, and offered a higher dollar amount than what Settlement Funding had offered. By offering better terms, RSL engaged in an act of interference sufficient to meet this element of the tort, notwithstanding Parenti's claim that he made the decision on his own.

Because Kelly knew of Parenti's contract with Settlement Funding and took the affirmative step of offering better terms, he clearly acted with the knowledge that interference with the 2010 Agreement would occur. Kelly's belief that RSL was entitled to compete in this manner is not relevant to this element of the cause of action; that fact comes into play in consideration of RSL's affirmative defense of justification. Settlement Funding has met its burden of showing that no dispute of fact exists on the element of willful and intentional interference.

Regarding causation and damages, RSL contends that Settlement Funding suffered no damages because Parenti had an absolute right under the 2010 Agreement to cancel without penalty and would not be liable for any penalties or damages in the case of a breach. The disclosure statement provided to Parenti in connection with the application for court approval stated that Parenti could cancel the transfer agreement without penalty within three days of signing it and that Parenti would not be responsible for penalties or liquidated damages in the event he breached the transfer

27

agreement.[79]   Ignoring the embellished characterization of this as
an "absolute right," the court finds that this evidence does not go
to the issue whether Settlement Funding might suffer damages as a
result of RSL's interference with the 2010 Agreement and does not
absolve RSL from the resulting damages.   The statements only
provided Parenti a *limited* time to change his mind and protected
him from penalties and *liquidated* damages in case of his breach.
The RSL Parties fail to convince the court otherwise.

RSL also argues that Settlement Funding suffered no actual
damages because it ultimately consummated the transaction with
Parenti.   Settlement Funding does not respond to this argument,
which clearly raises a fact issue.   The state district court's
November order approving the transfer of payments from Parenti to
Settlement Funding covers the identical portion of the structured
settlement as did the 2010 Agreement.   The parties are mum as to
what led to this turn of events, and the court order does not
provide details regarding the date of the underlying application or
the amount paid by Settlement Funding for the right to receive the
subject payments.

Testimony at the preliminary injunction hearing was that
numerous customers of Settlement Funding had terminated agreements

---

[79]   See Doc. 115-2, Ex. B to to Settlement Funding's Mot. for Partial
Summ. J., Tex. Transfer Disclosure p. 1.

with Settlement Funding in favor of the RSL Parties.[80]  Settlement
Funding, Sutherland explained, suffered monetary damages when the
RSL Parties were able to seize a transfer deal or when Settlement
Funding was forced to match the RSL Parties' offer.[81]  Settlement
Funding was also damaged by being "constantly in court fighting
against one particular competitor," as well as by the loss of
goodwill and existing customers, he said.[82]  The nature of the
testimony was not specific to 2010 Agreement with Parenti, except
for the mention of a cease-and-desist letter sent to RSL after its
contact with Parenti.

The general nature of the testimony undermines its value as
proof of damages suffered by Settlement Funding as a result of
RSL's interference with the 2010 Agreement.  Because the 2010
Agreement is the only contract for which Settlement Funding has
produced evidence of its existence and the RSL Parties'
interference, only damages related to it are pertinent to the
pending motion for partial summary judgment.  Thus, the only
relevant evidence is that pertaining to the cease-and-desist
letter.  In the absence of any contradictory evidence, Sutherland's
testimony is sufficient to establish causation and damages at least
with regard to the rather de minimis injury of having to send a

---

[80]    See Doc. 115-8, Ex. H to Settlement Funding's Mot. for Partial Summ.
J., Sutherland's Aug. 24, 2010 Hrg. Test. pp. 35, 44.

[81]    Id. p. 44.

[82]    Id. p. 36; see also id. p. 50.

29

letter.

Having found that Settlement Funding succeeded in proving that no dispute of fact existed on any of the elements of tortious interference with a contract, the court must now turn to the RSL Parties' affirmative defense of justification or privilege.   That defense applies if the interference was based either on the exercise of the defendant's own legal rights or on "a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." Prudential Ins. Co. of Am., 29 S.W.3d at 80 (citing Tex. Beef Cattle Co., 921 S.W.2d at 211).   The court decides as a matter of law whether the defendant had a legal right or a claim to a colorable legal right to interfere, but a jury must determine, with regard to a colorable legal right, whether the defendant, although mistaken, acted in good faith.   Id.   The defendant bears the burden of proving its justification defense. Collins v. Sunrise Senior Living Mgmt., Inc., No. 01-10-01000-CV, 2012 WL 1067953 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.)(citing Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989))

The RSL Parties offer three arguments in favor of a finding that its actions were justified or privileged.   They first argue that public policy supports competitive bids to achieve the best price for the transferor, which is the TSSPA's primary consideration.   Their second argument is that "RSL [was] exercising

its own bona fide rights under the [T]SSPA and possesse[d] an equal right in the subject matter of the contract."[83]   Finally, the RSL Parties contend that the language of the TSSPA, the opinion of one Texas court of appeals, and the conduct and legal arguments of their competitors support their actions and raise a fact issue on whether they had a claim to a colorable legal right, even if mistaken.   The court finds the RSL Parties' third legal argument to have merit, making discussion of the other two not necessary.

The TSSPA states that "no direct or indirect transfer of structure settlement payment rights shall be effective . . . unless the transfer has been approved in advance in a final court order." Tex. Civ. Prac. & Rem. Code § 141.004.   At the time that RSL interfered with the contract between Settlement Funding and Parenti, two federal district courts and one Texas court of appeals court had issued opinions that offered guidance on the viability of a contract for the transfer of structured settlement payment rights prior to court approval pursuant to the TSSPA.   See Symetra Life Ins. Co. v. Rapid Settlements Ltd., No. H-05-3167, 2007 WL 114497, at *1 (S.D. Tex. Jan. 10, 2007)(unpublished); Settlement Capital Corp. v. BHG Structured Settlements, Inc., 319 F. Supp.2d 729 (N.D. Tex. 2004); In re Rapid Settlements, Ltd., 202 S.W.3d 456 (Tex. App.—Beaumont 2006, pet. denied).

---

[83]    Doc. 124, the RSL Parties' Resp. to Settlement Funding's Mot. for Partial Summ. J. p. 22.

In Settlement Capital Corp., the U.S. District Court for the Northern District of Texas addressed a dispute between a factoring company and the owners of an annuity used to fund the payments of the structured settlement at issue. Settlement Capital Corp., 319 F. Supp.2d at 732 & n.2. There, the factoring company executed a transfer agreement with a structured settlement payee and, in the process of seeking court approval, served notice on Defendants as interested parties. See id. at 732. Defendants sent a response to both the court and the payee, opining that the transfer was inappropriate and not in the payee's best interest. Id. After receiving the letter, the payee terminated her agreement with the plaintiff and entered an agreement with the defendants. Id.

On consideration of the defendants' motion to dismiss, the court held that the plaintiff's transfer agreement was subject to improper interference, even though it was not effective until approved by the court. Id. at 733. The court rejected the defendants' justification defense, which they based on the argument that allowing responses such as theirs would assist courts in determining whether the transfer was in the best interest of the payees. Id. at 733–34.

More than two years later, the Beaumont court of appeals was also faced with a dispute between a factoring company and the owners of the subject annuity, among other parties. In re Rapid Settlements Ltd., 202 S.W.3d at 458. After receiving notice of the

32

factoring company's application for court approval, the owners of the annuity informed the court of the fair market value of the payments to be transferred and offered that amount. Id. at 458-59. Relying on language in the transfer agreement, the factoring company initiated arbitration and obtained a temporary injunction from the arbitrator. Id. at 459. The trial court granted an application to stay the arbitration and set aside the arbitrator's order. Id.

The court of appeals determined that the arbitration provision in the transfer agreement was not effective until a court approved the transfer. Id. at 461-62. The court concluded, "Because the agreement is not effective until the trial court approves the transfer in a final order, and it is undisputed that no such order exists, there is no agreement to arbitrate." Id. at 462. The Supreme Court of Texas denied the petition for review.

A few months after that decision, the U.S. District Court for the Southern District of Texas issued an opinion that, like In re Rapid Settlements, involved the effect of arbitration provisions in transfer agreements prior to court approval. Symetra Life Ins. Co., 2007 WL 114497, at *1. In contemplating whether court approval was "a condition precedent to the contract's existence or rather a condition precedent to [the defendant's] obligation to pay and to a prospective transferor's ability and obligation to transfer his or her annuity rights or interest," the court noted

33

that the transfer agreement at issue included obligations that were not subject to court approval, including promises by the transferor to cooperate as necessary and to execute any additional documents that might be required.  <u>Id.</u> at **19-20.

The district court acknowledged the contrary result in <u>In re Rapid Settlements, Ltd.</u> but mentioned the Texas court's failure to examine "whether the court-approval requirement applied only to the transfer obligation or whether there were other, preceding, obligations."  <u>Symetra Life Ins. Co.</u>, 2007 WL 114497, at *21. Ultimately disagreeing with the state court, the court concluded, "The lack of court approval goes to the contract's validity, not its existence."  <u>Id.</u>

Although neither the <u>In re Rapid Settlements, Ltd.</u> or <u>Symetra Life Ins. Co.</u> court considered the effect of its ruling on a tortious-interference claim, the contradictory rulings on the existence of a transfer agreement prior to court approval arguably left open the question whether solicitation of the sort engaged in by RSL was tortious interference with an existing contract.[84]  Based on the legal landscape at the time, the court finds that the RSL Parties presented a claim to a colorable legal right.

Feldman, an owner and executive of RSL, affirmed his reliance

_____

[84]    As discussed elsewhere in the memorandum, the state appellate court in this case found that a transfer agreement that has not been approved by a state district court may be subject to tortious interference.  However, that conclusion does not foreclose the possibility that, at the time of the interference, the RSL Parties had a claim to a colorable legal right.

on the In re Rapid Settlements, Ltd. decision, which was a Texas opinion as to which the Supreme Court of Texas denied a petition for review.[85]   The jury must decide whether to believe Feldman's testimony and whether generally the RSL Parties acted in good faith in pursuing that colorable legal right.   See Tex. Beef Cattle Co., 921 S.W.2d at 211 ("A jury question is presented only when the court decides that[,] although no legal right to interfere exists, the defendant has nevertheless produced evidence of a good faith, albeit mistaken, belief in a colorable legal right.").   Because there remains a question of fact on the RSL Parties' affirmative defense, Settlement Funding's motion for summary judgment on the tortious-interference claim must be denied.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** Settlement Funding's Motion for Partial Summary Judgment be **DENIED**. Settlement Funding's Motion to Strike is **DENIED** and the RSL Parties' Motion to Extend Time is **GRANTED**.

If this Memorandum and Recommendation is adopted, the issues that remain for trial on Settlement Funding's tortious interference claim are: 1) whether the RSL Parties acted in good faith in pursuing a colorable legal right; and, if the RSL Parties are not successful on the justification defense, 2) whether Settlement

---

[85]   See Doc. 115-3, Ex. C to Settlement Funding's Mot. for Partial Summ. J., Feldman's Aff. ¶ 7.

Funding suffered monetary damages from the interference with the 2010 Agreement; and 3) whether a permanent injunction that extends beyond the 2010 Agreement (which now appears to be completed) is appropriate under the facts proven by Settlement Funding.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 25th day of February, 2014.

Nancy K. Johnson
United States Magistrate Judge